**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SAMUEL WILLIAM MAINES,** | § | |
| **ID # 44442-177,** | § | |
| **Movant,** | § | |
| | § | |
| **v.** | § | **No. 3:13-CV-4631-B (BH)** |
| | § | **(3:12-CR-0151-B)** |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Pursuant to *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant filings and applicable law, the *Motion by a Person in Federal Custody to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255*, filed November 20, 2013 (doc. 1), should be **DENIED** with prejudice.

**I. BACKGROUND**

Samuel William Maines (Movant) challenges his federal conviction and sentence in Cause No. 3:12-CR-0151-B. The respondent is the United States of America (Government).

**A.** <u>**Background Facts**</u>

On March 26, 2012, the Homeland Security Investigation (HSI) office in Dallas, Texas, conducted an undercover operation to identify individuals who were distributing child pornography through peer-to-peer file sharing networks. (3:12-CR-151-B, Doc. 18 at 2.)[1] An HSI agent identified a computer that made 1200 files with names indicative of child pornography available using the peer-to-peer program Shareaza. (*Id.*) The agent confirmed that the files contained child pornography and downloaded three images from that computer. (*Id.*)

_____

[1] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

On May 2, 2012, the HSI executed a search warrant at Movant's home. (*Id.*) The agents seized from his bedroom a generic self-built computer that contained the child pornography images sent to the HSI agent on March 26, 2012. (*Id.* at 3.) Movant agreed to waive his rights and talk to the HSI agents. (*Id.*) He admitted that the generic computer seized from his room was his, he had built it himself, and that he was the only user of the computer. (*Id.*) A forensic analysis of the generic computer revealed over 900 videos and 1200 images of child pornography in a shared file folder; some of the images depicted bondage and sadism involving minors. (*Id.*)

**B.     Procedural History**

On May 3, 2012, Movant was charged by criminal complaint for knowingly possessing child pornography. (*See* 3:12cr151-B, doc. 1.) He made his initial appearance on that date and was appointed an Assistant Federal Public Defender (AFPD). (*Id.,* doc. 4.) Movant waived his preliminary hearing, but proceeded with a detention hearing and was ordered detained. (*Id.,* docs. 7-9.) A second AFPD entered an appearance on May 4, 2012. (*Id.,* docs. 3, 6.)

Movant was charged by indictment of May 23, 2012 with 1) transporting and shipping child pornography in violation of 18 U.S.C. § 2252A(a)(1); and 2) possessing child pornography in violation of 19 U.S.C. § 2252A(a)(5)(B). (*See id.,* doc. 12.) On June 6, 2012, he signed a plea agreement and a factual resume. (*See id.,* docs. 16, 18.) In the plea agreement, he agreed to plead guilty to count 2 and waived the right to contest his conviction and sentence in any direct appeal or collateral proceeding, except to bring a direct appeal challenging his sentence as either exceeding the statutory maximum punishment or having been calculated by way of an arithmetic error, to challenge the voluntariness of his plea or waiver, or to bring a claim of ineffective assistance of counsel. (*Id.,* doc. 16 at 5.) The Government agreed not to bring any additional charges against

2

Movant based upon the underlying conduct. (*Id.* at 3). Movant also signed a factual resume in which he stipulated that he knowingly possessed the computer containing child pornography and that he downloaded the images and videos of child pornography knowing that they depicted minors engaged in sexually explicit conduct. (*Id.,* doc. 18 at 2, 4.)

On July 12, 2012, the second attorney filed an unopposed motion to withdraw on grounds that there were "significant issues relevant to the Texas Disciplinary Rules of Professional Conduct that prevent[ed]" him "or any other member of the Office of the Federal Public Defender from representing [Movant]" in the case. (*Id.*, doc. 21.) The motion was granted the following day. (*Id.,* doc. 23.) On July 16, 2012, a third attorney was appointed to represent Movant, and rearraignment was reset for August 16, 2012. (*Id.,* doc. 24.)

On August 16, 2012, Movant appeared and entered a plea of guilty to the second count of the indictment pursuant to his plea agreement. (*See id.* docs. 16, 47.) During rearraignment, he acknowledged under oath that (1) he understood that he was under oath and that new charges could be filed against him if he said anything untrue; (2) he had thoroughly reviewed the indictment and fully understood the charges against him; (3) he had reviewed the plea agreement and the plea agreement supplement with his counsel and fully understood the documents; (4) no one had threatened or pressured him or offered any benefit of lighter sentence or beneficial agreement to plead guilty; (5) he was voluntarily pleading guilty because he was guilty; (6) he understood that in the plea agreement he was giving up the right to appeal except under certain circumstances; (7) he understood that by pleading guilty, he would be deprived of civil rights such as a right to vote, to hold public office, or possess a firearm; (8) he understood that he had the right to plead not guilty, have a full jury trial, be presumed innocent with no obligation to speak at trial or present evidence,

and cross-examine the government's evidence; (9) he understood that the agreed sentence in the plea agreement was ten years; (10) he had reviewed the factual resume with his counsel and he agreed with it; and (11) he was fully satisfied with the advice and counsel his attorney gave him in this case. (*Id.*, doc. 47 at 3-15.)

## C.   PSR

The Probation Office subsequently prepared a pre-sentence report (PSR) that recommended a two-level enhancement for possessing images and videos of child pornography involving prepubescent minors, a five-level enhancement for distribution of child pornography for "the receipt, or expectation of receipt, of a thing of value," a four-level enhancement for possessing images that included bondage and other sadistic acts involving minors, a two-level enhancement for using a computer, a five-level enhancement for involving at least 600 images of child pornography, a two-level enhancement for obstruction of justice,[2] and no reduction for acceptance of responsibility. (*Id.,* PSR at 8-9.) The resulting guideline calculation was an offense level of 38 with a sentencing range of 235 to 293 months. (*Id.* at 14.) The PSR noted that because the statutorily authorized maximum sentence of ten years is less than the minimum of the guideline range, the recommended guideline term of imprisonment was 120 months. (*Id.*) Movant's attorney objected to the five-level enhancement for using a peer-to-peer program on grounds that there was no evidence that Movant intended to gain anything in value. (*Id.,* doc. 30 at 2.) He withdrew the objection prior to sentencing, however. (*Id.*, doc. 31.) Movant was sentenced to 120 months imprisonment on November 15, 2012. (*See id.,* docs. 34; 48 at 5.)

---

[2] The PSR recommended an obstruction of justice enhancement because while in custody, Movant tried to convince his father to confess to the crime with which he was charged, and the father consented. (PSR at 8.)

Movant did not appeal his conviction and sentence to the Fifth Circuit Court of Appeals.

D.      **Substantive Claims**

In his 28 U.S.C. § 2255 motion, filed on November 20, 2013, (doc. 45), Movant asserts the

following claims:

(1) Ground One: [Movant's first attorney] rendered ineffective assistance at the initial appearance stage of the proceedings (a) by failing to challenge the validity of Movant's arrest and advising Movant to waive a probable cause hearing, (b) by failing to object to errors in the government's motion for detention which led to a presumption against Movant's release on bail (c) by failing to object to false and prejudicial statements made by government witnesses in support of Movant's pretrial detention, (d) by failing to argue facts in support of Movant's release on bail, and (e) by failing to advise Movant of his right to testify at the detention hearing.

(2) Ground Two: [Movant's second attorney] rendered ineffective assistance at the pre-trial stage of the proceedings by failing to move to suppress the evidence on the grounds (a) that Movant's statements to law enforcement officials were compelled in violation of Movant's right against self incrimination, (b) that the initial search of a certain computer, via the internet, purportedly belonging to Movant, was illegal, (c) that the affidavit in support of the search warrant contained materially false statements and omissions, and failed to establish probable cause, (d) that the search warrant for Movant's residence was overly broad and lacked particularity, and (e) that the search was unreasonable and that the "good faith" exception did not apply.

(3) Ground Three: [Movant's second attorney] rendered ineffective assistance at the signing of the guilty plea stage of the proceedings by advising, urging, and inducing Movant into signing the government's plea agreement involuntarily (a) without conducting any investigations [sic] into the facts of the case and the law in relation to the facts, (b) by advising and urging Movant to plead guilty to a non-existent offense, (c) by erroneously advising Movant that his maximum sentence exposure at trial was 30 years, (d) without disclosing to Movant, prior to seeking Movant's signature on the plea agreement, the government's version of the facts, which [the second attorney] knew or should have known were materially untrue, or explaining that Movant would be required to admit as true those same untrue facts, and (e) by improperly and unethically advising Movant that in order to not plead guilty Movant would have to implicate and accuse his father in the indicted offense.

(4) Ground Four: [Movant's third attorney] rendered ineffective assistance at the entry of the guilty plea stage of the proceedings (a) by, notwithstanding that Movant adamantly asserted his innocence, insisting and persisting that Movant appear before the Court and enter his guilty plea, (b) by threatening that if Movant did not plead

guilty Movant would be charged and convicted of "Obstruction of Justice," whereupon, Movant would receive an additional 20 years consecutive to the 30 years for the underlying offense, and (c) by instructing Movant to answer affirmative "Yes" and "No" answers only to the Court's questions at the colloquy in order to falsely indicate that Movant was guilty of the indicted offense, had not been threatened by counsel, had been properly advised by counsel, and was satisfied with counsel.

(5) Ground Five: [Movant's third attorney] rendered ineffective assistance at sentencing by failing to object to (a) the 5 level increase for distribution with the expectation or receipt of a thing of value per § 2G2.2(b)(3)(B), (b) the 2 level increase for the use of a computer per § 2G2.2(b)(6), (c) the 5 level increase for possessing over 600 images per § 2G2.2(b)(7)(D), and (d) the 2 level increase for obstruction of justice per § 3C1.1 and the subsequent denial of a 3 level reduction for acceptance of responsibility per § 3E1.1.

(*See* 3:13-CV-4631-B, doc. 1 at 2-3.)

The Government filed a response brief on January 21, 2014. (*Id.*, doc. 6.) Movant filed a reply brief on March 10, 2014. (*Id.*, doc. 12.) On May 28, 2014, and June 3, 2014, he filed motions for leave to expand the record that were construed as motions for leave to file an amended § 2255 motion, and they were granted on August 18, 2014. (*See id.*, docs. 15-17.) The proposed amendments were filed that same day. (*Id.*, docs. 18-19.) In one, Movant alleged for the first time that his guilty plea was involuntary because he did not understand the consequences of his plea, i.e., that he was "waiving all nonjurisdictional defects," and that the Government breached the plea agreement by making that allegation. (*Id.*, doc. 19 at 6.)[3] The Government filed a response brief on September 15, 2014. (*Id.*, doc. 20.) Movant then filed a reply brief on October 21, 2014, in which he asserted for the first time that his plea was involuntary because he was not informed of and did not understand the true nature of the offense, and because the prosecutor threatened him and his

---

[3] Movant also alleged that his counsel provided erroneous advice that caused him to decide not to appeal, but expressly withdrew that claim in his reply and elected to challenge only the voluntariness of his plea. (*See* 3:13-CV-4631-B, doc. 22 at 12 ("Movant therefore withdraws his claim that he was misadvised as to the nature of the direct appeal process, and will instead proceed to challenge the voluntariness of his guilty plea").)

father with obstruction of justice charges. (*Id.*, doc. 22.) He also added an allegation that his plea was involuntary because his attorney failed to explain that the waiver included all nonjurisdictional defects. (*Id.*, doc. 22 at 18.)

## E.   **Movant's Evidence**

With his § 2255 motion, Movant submitted his own affidavit, two affidavits by his parents, one motion to suppress, a letter from his second attorney dated July 27, 2012, the search warrant and portions of the application and affidavit for search warrant, a warrant for arrest, a report of investigation, an electronic mail communication between his third attorney and the prosecutor, a copy of his prepared speech entitled "My Life is a Dud," two letters from his father to the Court, and a letter by Doug Karl. (*Id.*, doc. 2 at 36-95.)   He also submitted his second affidavit with his proposed amendments that was filed on August 18, 2014. (*Id.*, doc. 19.)

### 1.   *Movant's First Affidavit (October 22, 2013)*

Movant's first affidavit asserts that he is factually innocent of the two-count charges in the indictment. (*Id.*, doc. 2 at 36.) Noting that the child pornography was found only on his desktop computer, he states that a virus is a computer program that is capable of installing software and downloading files, and that he had not run any virus protection software on his desktop. (*Id.* at 37.) If any images of child pornography were on his computer, he did not know about them and never viewed them. (*Id.* at 38.) He claims that he is a homosexual individual who prefers a committed relationship over any pornographic materials, and that he has never sought any pornographic materials, particularly materials depicting females. (*Id.* at 36.) Part of the reason he pled guilty was because he was afraid to raise his homosexuality as a defense that may prejudice his case; he also did not want his family to know. (*Id.*)

7

After his arrest, the first AFPD at the initial appearance advised him to waive a probable cause hearing without explaining that he could have been released if no probable cause existed. (*Id.* at 41.) The attorney also told him that he did not have the right to testify at the hearing. (*Id.*) If he had known that he had the right to testify at the hearing, he would have. (*Id.*)

Movant asked his second attorney whether any of the evidence against him could be suppressed, and the attorney answered in the negative.[4] (*Id.* at 38.) He also gave the second attorney several defense strategies, including the possibility that a trojan virus may have accessed his computer and allowed a third-party to download the child pornography. (*Id.*) The second attorney refused to investigate this theory. (*Id.*) Movant insisted that he wanted to go to trial and did not want to sign the plea agreement, but the second attorney told him that his maximum sentence exposure was 30 years, and that the agreement of ten-year sentence was "extremely lenient." (*Id.*) He also urged Movant to sign the plea documents without an explanation, stating that the "plea papers can't be used against you." (*Id.* at 41.) He also advised Movant that his "only viable defense, and the only way to avoid pleading guilty to the crime of which [he was] factually innocent, would be to 'throw [his] folks under the bus.'" (*Id.* at 38.) Based on the advice, Movant called his father and asked him to take responsibility for the crime. (*Id.*)

On July 9, 2012, Movant's parents visited him after a meeting with the second attorney. (*Id.* at 38-39.) They told him that the second attorney said that he was not serious when he advised Movant to throw his folks under the bus, and that the attorney could not be part of such a plan. (*Id.* at 39.) On July 12, 2012, the second attorney filed a motion to withdraw from the case due to "an

---

[4]  After the second attorney withdrew, he sent Movant the discovery related to his case, and that is when he noticed that the attachments to the search warrant were missing. (3:13-CV-4631, doc. 2 at 38.)

undisclosed 'conflict,'" and told Movant that it would be in his best interest not to "disclose the nature of the 'conflict' to anyone." (*Id.*)

On July 16, 2012, Movant was appointed a third attorney. (*Id.*) He attempted to have the third attorney investigate the trojan virus theory and to file a motion to suppress evidence, but the attorney flatly refused. (*Id.*) He told the attorney that he wanted to withdraw his guilty plea and proceed to trial. (*Id.*) The attorney told him that if he withdrew his plea, the prosecutor would pursue an obstruction of justice charge against him and his father based on the recorded phone calls where he asked his father to take responsibility for the crime. (*Id.*) The prosecutor would also charge him with "anything that is potentially indictable." (*Id.*) He also told Movant that if he went to trial, the jury would hate him and he would go to prison for the rest of his life. (*Id.*) Movant attempted to have the third attorney move to suppress the recorded phone calls because the Government's motion for detention had another person's name on it, or because the evidence was "unduly and unfairly prejudicial," but the attorney refused. (*Id.*)

The third attorney told Movant that if he pled guilty, the obstruction of justice charge would go away; when he received the PSR, however, it was a basis for an upward adjustment. (*Id.* at 40.) When he asked his attorney, the attorney told him that the prosecutor wanted a record of his obstruction of justice. (*Id.*) Movant asked his attorney to file an objection to the enhancement, but the attorney did not follow his instruction. (*Id.*) The attorney did file an objection to the five-level enhancement for distribution of child pornography for receipt of a thing of value, but withdrew the objection at the prosecutor's request. (*Id.*) The attorney explained to Movant that if he did not withdraw the objection, the plea agreement would "blow up," and that he would receive a guaranteed 50-year sentence. (*Id.*)

On the day of rearraignment, Movant attempted to convince the third attorney to defend him for the last time. (*Id.*) When he told the attorney that he wanted to go home, the attorney told him that would not happen. (*Id.*) He instructed Movant to say "Yes, Your Honor" if the judge asked him whether he was pleading guilty because he was guilty and whether he was pleading guilty voluntarily. (*Id.*) The attorney told Movant that if he did not affirmatively answer to those questions, the plea deal would "blow up" and he would receive a 50-year sentence. (*Id.*)

Movant prepared a speech explaining his innocence to deliver at sentencing. (*Id.*) The third attorney told him if he delivered the speech, it would "blow up" the plea deal, so the only thing Movant said at sentencing was, "I don't have anything to say." (*Id.*) He had always intended to challenge the voluntariness of his plea immediately after sentencing, but he was not appointed an appellate attorney, and the third attorney never initiated communication with him after sentencing. (*Id.* at 40-41.) Movant did not understand the fundamental difference between an appeal and a collateral attack; he was never told how to challenge the voluntariness of his plea. (*Id.* at 41.)

### 2. *Movant's Second Affidavit (August 18, 2014)*

Movant's second affidavit states that the second attorney handed him "plea papers" and instructed him to sign them. (3:13-CV-4631-B, doc. 19 at 2.) He told Movant that a sentence of 10 years was the best deal he could get, and that "Due Process" or presumption of innocence were out-dated ideas that were no longer applicable. (*Id.*) He also told Movant that he "would be presumed guilty by the prosecutor, by a jury, and by the judge, and that [his] only hope of ever going free would be to affirmatively prove [himself] innocent by getting someone else to confess to having physically accessed [his] computer to download child pornography." (*Id.*) The second attorney did not investigate the possibility that a computer virus may have been used to plant the child

pornography by a third party. (*Id.*) Movant signed the plea agreement against his will. (*Id.* at 4.) He was able to review the evidence on his case only after the second attorney withdrew from the case, and he noticed that the search warrant he received did not have attachments. (*Id.*)

Movant told his third attorney that he wanted to withdraw his guilty plea, move to suppress evidence against him, and dismiss the case. (*Id.*) The third attorney told him that the prosecutor would retaliate by charging Movant and his father with obstruction of justice based on the recorded phone calls.[5] (*Id.*) The third attorney also told Movant that the recorded calls could not be suppressed. (*Id.*)

Before pleading guilty, Movant learned that the Government's motion for detention against him had a different person's name, and the case number section was left blank. (*Id.*) When he brought this to the third attorney's attention, the attorney said the error was merely a typo and that it did not matter. (*Id.*) The attorney insisted that Movant plead guilty despite his assertion of innocence. (*Id.* at 5.) He pled guilty and admitted to the Court that he was voluntarily pleading guilty only because he and his father were being threatened with additional charges. (*Id.*) The third attorney's "intimation" was that the plea colloquy was a mere formality. (*Id.*) Movant believed that he would be punished by the Court if he said anything other than "Yes, Your Honor." (*Id.*) He further thought that if he disclosed the threat of additional charges, the Court would carry out the threat. (*Id.*)

When Movant pled guilty, no one informed him that he was waiving all non-jurisdictional defects. (*Id.* at 6.) He believed his plea was a "conditional plea," expressly reserving the right to

---

[5]  Movant claims that he was told that if he withdrew his plea or assert his rights, his "father would die in prison." (Doc. 19 at 4.)

bring a claim of ineffective assistance of counsel. (*Id.*) Movant also told the third attorney that he

wanted to appeal his conviction immediately after sentencing because his plea was involuntary. (*Id.*

at 7.) When he asked where the direct appeal was filed, the attorney told him that it went to the same

judge who sentenced him. (*Id.*) For that reason, Movant did not instruct the attorney to appeal the

case. (*Id.*)

### 3.    Movant's Father's Affidavit

Movant's father stated that he was willing to implicate himself in the offense because he

thought it was the second attorney's strategy to free Movant. (*Id.* at 48.) The second attorney told

him that "he was not serious when he instructed [Movant] to 'throw [his] folks under the bus.'" (*Id.*)

The attorney did not want any involvement in Movant's case and told the father that "if it were to

become known that he had instructed [Movant] to falsely accuse [the father . . .] he would have to

withdraw from the case." (*Id.*)

Movant's father spoke to Movant's third attorney over the phone on several occasions. (*Id.*

at 45.) He told the third attorney that Movant was innocent and asked why he was not doing more

to free Movant. (*Id.*) The attorney responded, "[w]hat if he [was] guilty? Shouldn't he be punished?"

(*Id.*) The attorney also commented that he was working for free. (*Id.*) Another time, the father

pointed to the fact that there was no evidence that Movant knew the child pornography was on his

computer, and the third attorney stated that the issue was not whether Movant knowingly possessed

the child pornography, but whether the computer contained child pornography and Movant

possessed his computer. (*Id.*)

Per Movant's request, the father wrote a letter to the Court explaining that Movant was

innocent. (*Id.* at 46.) Movant told him of his plan to fire the third attorney at the sentencing hearing,

inform the Court that his plea was induced by the prosecutor's threats, and ask his father to speak

on his behalf. (*Id.*) Movant did not do any of these things at the sentencing hearing, however. (*Id.*)

Several weeks later, Movant told his father that he was misled by a fellow inmate that his appeal

would be handled immediately after sentencing. (*Id.*) When Movant discovered that he had been lied

to, he wrote a letter to the Court asking for a chance to make his speech to assert his innocence. (*Id.*)

Movant sent the letter to his father, who forwarded it to the Court.[6] (*Id.*)

### 4.      *Movant's Mother's Affidavit*

Movant's mother states that she spoke to the second attorney and asked whether it was

possible for someone to plant a virus in her son's computer and use the computer. He

unambiguously answered "no" and refused to investigate that possibility. (*Id.* at 50.) She further

states that her husband was willing to take responsibility for the child pornography because he

believed it was the second attorney's strategy to free Movant. (*Id.* at 49.) On July 9, 2012, Movant's

mother and father met with him regarding his advice to implicate them in the offense. (*Id.*) The

attorney "insisted that he [was not] serious when he instructed [Movant] to 'throw [Movant's] folks

under the bus,' and that he could not be part of such a plan." (*Id.*) On July 12, 2012, Movant's

mother attended what was scheduled to be Movant's rearraignment, but the second attorney

withdrew from the case instead, citing an undisclosed conflict. (*Id.*)

## II. SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for

a narrow range of injuries that could not have been raised on direct appeal and would, if condoned,

result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir.

---

[6]  This letter does not appear on the docket.

1996) (citations and internal quotation marks omitted). It is well established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Where a § 2255 movant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if he can first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Frady*, 456 U.S. at 167-68). However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the [ ] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the defense. *Willis*, 273 F.3d at 597.

### III. VOLUNTARINESS OF PLEA

Movant claims that his plea was involuntary. (3:13-CV-4631-B, docs. 12 at 8; 19 at 6; 22 at 12-20.)

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruiz*, 536 U.S. at 629 (quoting *Brady v.*

14

*United States*, 397 U.S. 742, 748 (1970)); *accord Bousley*, 523 U.S. at 618 (a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent' " (quoting *Brady*, 397 U.S. at 748)). A plea induced by threats, improper promises, deception, or misrepresentation is not voluntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n. 22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly. It requires "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The Court must only ascertain whether the defendant has a realistic or

15

reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627–28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

A.     **True Nature of Charge**

In his reply brief to the amended motion, Movant claims for the first time that his guilty plea was involuntary because he was not informed of the true nature of the charge to which he pled guilty since he did not know he possessed child pornography on his computer. (3:13-CV-4631-B, doc. 22

16

at 12-14.)[7]

The elements of an offense under 18 U.S.C. § 2252A(a)(5)(B) are that the defendant "(1) knowingly possessed material that contained an image of child pornography, and (2) a jurisdictional nexus." *United States v. Terrell*, 700 F.3d 755, 764 (5th Cir. 2012).  Further, "[p]ossession of child pornography may be either actual or constructive. . . . [and c]onstructive possession is the ownership, dominion or control over an illegal item itself or dominion or control over the premises in which the item is found." *United States v. Moreland*, 665 F. 3d 137, 149-50 (5th Cir. 2011) (internal quotation marks omitted).

Movant stipulated to each element of the crime to which he was pleading guilty. (Doc. 18 at 2-5.) The computer containing child pornography was found in his bedroom, and he admitted that he built it himself and only he had access to it. (*Id.* at 3.) By admitting that he knowingly possessed the computer that contained child pornography, Movant admitted that he constructively possessed child pornography. In the plea agreement, Movant agreed that he was waiving his rights to have his guilt proven beyond a reasonable doubt and against compelled self-incrimination. (Doc. 16 at 1.) He affirmed that he understood the nature and elements of the crime and that the factual resume he signed was true. (*Id.*) At his rearraignment, Movant testified under oath that he understood that he was under oath, he fully understood the charges against him, he fully understood the plea documents, he had not been threatened or pressured to plead guilty, he was voluntarily pleading

---

[7] Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts requires that motions filed pursuant to 28 U.S.C. § 2255 "specify all the grounds for relief available to the moving party." Claims raised for the first time in a reply brief need not be considered by the Court. *See United States v. Sangs*, 31 F. App'x 152, 2001 WL 1747884, at *1 (5th Cir. Dec. 11, 2001) (affirming, in § 2255 context, district court's refusal to consider issue raised for the first time in reply to government's answer to habeas petition) (citing *Cervantes*, 132 F.3d at 1110) (holding that a district court does not abuse its discretion in refusing to consider new issues in a § 2255 reply brief after the government filed its response)); *see also Perez v. United States*, No. 3:12-CV-4144-K, 2013 WL 518660 (N.D. Tex. Feb. 12, 2013); *French v. United States*, No. 3:10-CV-1129-M, 2010 WL 4052186, at *5 (N.D. Tex. Sept. 10, 2010). As discussed below, these new claims do not entitle him to relief even if considered.

guilty because he was guilty, he understood that he was giving up the right to appeal except under certain circumstances, he understood that the agreed sentence was ten years, and he was fully satisfied with his attorney's advice. (Doc. 47 at 3-15.)

"Ordinarily a defendant will not be heard to refute his testimony given under oath." *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985). "'Solemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.' *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). Courts also presume the regularity of court documents and accord them "great weight." *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir.1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity"). Nevertheless, when "the defendant offers specific factual allegations supported by the affidavit of a reliable third person, he is entitled to a hearing on his allegations." *United States v. Sanderson*, 595 F.2d 1021, 1021 (5th Cir. 1979) (per curiam). "If, however, the defendant's showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary." *Cervantes*, 132 F.3d at 1110.

Movant provides his and his father's affidavits to support his claim that he did not know the true nature of the crime to which he was pleading guilty.  (3:13-CV-4631-B, doc. 22 at 12-14.) His affidavits claim that if the child pornography images were on his computer, he did not know about and never saw them. (*Id.*, doc. 2 at 38, doc. 19 at 2.) Movant's conclusory assertions, however, are

18

belied by his testimony at rearraignment and the plea agreement and factual resume.[8] *See United States v. Cothran*, 302 F.3d 279, 284 (5th Cir. 2002) (giving the statements made during a plea "colloquy greater weight than . . . unsupported, after-the-fact, self-serving revisions.").

Movant's father's affidavit describes his statements to the third attorney that there was no evidence that Movant knew his computer contained child pornography.  His father's affidavit does not go to whether Movant understood the nature and substance of the charge against him, only his perceived lack of evidence.  *See Taylor*, 933 F.2d at 329.  The father claims that the third attorney told him that the issue was not whether Movant knowingly possessed child pornography, but whether his computer contained child pornography and whether he possessed his computer. (*Id.* at 45.) The third attorney's description of the possession of child pornography describes constructive possession.  *See Moreland*, 665 F. 3d at 149-50 ("Constructive possession is the ownership, dominion or control over an illegal item itself or dominion or control over the premises in which the item is found."). Movant admits in his affidavit that his computer was password protected and his bedroom door, where the computer was located, was locked at all times. (3:13-CV-4631, doc. 19 at 2.)  Even assuming that the father is a reliable third party, his affidavit does not provide specific factual allegations to support Movant's claim that he did not understand the true nature of the charge against him.  *Sanderson*, 595 F.2d at 1021.  No hearing on this issue is therefore necessary.

Movant has not provided any evidence that overcomes the presumption of veracity given to his sworn statements in court that he was informed of and understood the true nature of the crime with which he was charged. This claim is without merit.

---

[8]  Despite Movant's contention that he never admitted to knowingly possessing child pornography, his factual resume states that he downloaded child pornography images using the internet and that he *knew* that the images and videos found in his computer depicted minors engaged in sexually explicit conduct. (Doc. 18 at 4.)

## B.     Consequences of Plea

Movant asserts that he did not understand the consequences of his plea because no one told

him that he was waiving all non-jurisdictional defects, including ineffective assistance of counsel

claims, by pleading guilty. (3:13-CV-4631, docs. 12 at 8; 19 at 6; 22 at 17-18.)

"The general rule is that a plea of guilty, voluntarily and understandingly made, constitutes

a waiver of nonjurisdictional defects and defenses, including claims of violation of constitutional

rights prior to the plea." *Rivers v. Strickland*, 264 S.Ct. 121, 124 (1975); *see also United States v.*

*Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008) ("[I]n general, 'once a guilty plea has been entered, all

nonjurisdictional defects in the proceedings against a defendant are waived'", including ineffective

assistance claims, although a petitioner may raise ineffective assistance to the extent that it affected

the voluntariness of his plea.) (quoting *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983)).

Movant's parents' affidavits do not discuss anything related to his understanding of the

consequences of the plea, and his affidavits offer only conclusory assertions that do not contradict

his sworn testimony. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir.1993) (stating that

conclusory allegations on a critical question do not raise a constitutional issue). He has not provided

any evidence that may overcome the presumption of veracity given to his sworn statements in court

that he understood the consequences of his guilty plea. Because his guilty plea was voluntary and

knowing, this ground is therefore without merit.[9]

## C.     Prosecutor's Threats

In his reply brief to the amended motion, Movant also claims for the first time that his plea

---

[9]   Movant contends that the Government breached the plea agreement when it asserted that he waived all nonjurisdictional defects by pleading guilty because the plea agreement did not include such limitation. (3:13-CV-4631-B, doc. 19 at 6.) He has not identified any part of the plea agreement that the Government breached, however.

was involuntary because it was a result of the prosecutor's threat to pursue "obstruction of justice" charges against him and his father. (3:13-CV-4631, doc. 22 at 20.)

Threats of additional charges are common in plea negotiations, and they do not undermine the voluntariness of a guilty plea. *See United States v. Felice*, 272 F. App'x 393, 396 (5th Cir. 2008). Even assuming for purposes of the motion that the prosecutor did threaten to bring the obstruction of justice charge against the father,[10] the Fifth Circuit has stated that "[i]t is generally within a prosecutor's discretion merely to inform an accused that an implicated third person will be brought to book if he does not plead (guilty). . . . If (an accused) elects to sacrifice himself for such motives, that is his choice." *United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir. 1979) (internal quotation marks omitted) (citing *Kent v. United States*, 272 F.2d 795, 798 (1st Cir. 1959)). When a prosecutor has probable cause to bring charges against a third party, the defendant's plea "would not be involuntary by reason of his desire to extricate his [father] from such a possible good faith prosecution." *United States v. Diaz*, 733 F.2d 371, 375 (5th Cir. 1984) (emphasis added). Here, there is no dispute regarding the existence of a recording of a call between Movant and his father discussing the father taking the blame for the child pornography charge. The prosecutor had probable cause to bring charges against both Movant and his father. He has not shown that the alleged threats made his plea involuntary, and he is not entitled to relief on this claim.

In conclusion, Movant has not shown that his plea of guilty was involuntary.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL THAT IMPACTED THE VOLUNTARINESS OF MOVANT'S PLEA

Movant argues that his second and third attorneys' ineffectiveness rendered his guilty plea

---

[10]   The only objective evidence Movant provides is a copy of an electronic mail exchange between the prosecutor and the third attorney in which the prosecutor stated that she would bring all charges against Movant if he did not plead guilty. (*See* 3:13-CV-4631, doc. 2 at 85.)

21

involuntary. He contends that his second attorney advised and induced him into signing the plea

agreement, and that his third attorney insisted that he plead guilty, threatened that the prosecutor

would charge him with "obstruction of justice" if he did not plead guilty, and instructed him to only

answer "yes" or "no" at the plea hearing.  (3:13-CV-4631, doc. 2 at 24.)

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

counsel, both at trial and on appeal.[11] *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v.*

*Lucey*, 469 U.S. 387, 396 (1985). This right includes the effective assistance of counsel during the

plea-bargaining process. *Lafler v. Cooper*, —— U.S. ——, 132 S.Ct. 1376, 1384 (2012) (citing

*McMann*, 397 U.S. at 771). To successfully state a claim of ineffective assistance of counsel, the

prisoner must demonstrate that counsel's performance was deficient and that the deficient

performance prejudiced his or her defense. *See Strickland*, 466 U.S. at 687. A failure to establish

either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally

effective. *See id.* at 697. The prongs may be addressed in any order. *Smith v. Robbins*, 528 U.S. 259,

286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*,

466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially

influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a

movant must show that "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a

---

[11]   The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal
prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. art.
VI.

probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (stating that the inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

Although a guilty plea ordinarily waives all non-jurisdictional defects, including ineffective assistance claims, a petitioner may raise ineffective assistance to the extent that it affected the voluntariness of his plea.  *United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008) (quoting *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir.1983) ("once a guilty plea has been entered, all non-jurisdictional defects in the proceedings against a defendant are waived," and the waiver "includes all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea.")). When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

A.     **Third Attorney's Actions (Ground Four)**

Movant contends that his plea was not voluntary because his third attorney insisted that he plead guilty, threatened that he would face additional charges if he did not, and instructed him to answer only "yes" and "no" at the rearraignment. (3:13-CV-4631, doc. 2 at 24-27.) He also asserts

that the attorney misrepresented the law by stating that it was enough for Movant to have possessed a computer that contained child pornography. (*Id.* at 25.)

### 1.      *Threats and Coercion*

Alleged threats and coercion by the third attorney "may render [Movant's] plea involuntary only if the conduct of counsel amounts to ineffective assistance." *Brisco v. Quarterman*, No. 3:04-CV-1241, 2007 WL 1237951 at *10 (N.D. Tex. Apr. 26, 2007); *see also Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994) ("[I]n a guilty plea scenario, a [movant] must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error."). Movant must show that the third attorney threatened him to plead guilty, and that he would not have pled guilty if the third attorney did not insist on him pleading guilty. *See Strickland*, 466 U.S. at 697.

Movant claims that his attorney told him that if he went to trial, the jury would hate him and that he would go to prison for the rest of his life. (3:13-CV-4631, doc. 2 at 39.) He has not shown when and where this discussion occurred. He also fails to produce independent indicia of the alleged threat. *See Sanderson*, 595 F.2d at 1021. Neither of his parents' affidavits states that they were eye-witnesses to the threat. (*See id.* at 43-50.) Movant's assertion is also inconsistent with his conduct on the record. He testified at his rearraignment hearing that no one had threatened or pressured him or offered any benefit of a lighter sentence or beneficial agreement to plead guilty and that he was voluntarily pleading guilty because he was guilty. (Doc. 47 at 3-15.) In addition to the failure to provide sufficient evidence of the alleged threats, his conduct on the record clearly contradicts his allegation. An evidentiary hearing on this claim is therefore unnecessary. *See Cervantes*, 132 F.3d at 1110.

Movant next contends that the third attorney threatened that the prosecutor would bring the

obstruction of justice charge against him and his father, and press any and all charges against him, if he did not plead guilty. (3:13-CV-4631, doc. 2 at 24-25.) He also argues that the third attorney was deficient because he did nothing to defend against the prosecutor's threats. (*Id.* at 26.) As already discussed, however, threats of additional charges do not undermine the voluntariness of a guilty plea. *See Felice*, 272 F. App'x at 396; *Nuckols*, 606 F.2d at 569; *Diaz*, 733 F.2d at 375. Movant cannot show that relaying the prosecutor's intent to charge him with additional counts was a constitutionally deficient conduct by the third attorney.  Movant has not shown as reasonable probability that the outcome would have been different had the third attorney not told him of the prosecutor's intent, or what the attorney could have done.

Movant next alleges that the third attorney instructed him to say simply "yes" or "no" at rearraignment; otherwise his plea deal would "blow up" and he would receive a guaranteed 50-year minimum sentence. (3:13-CV-4631, doc. 2 at 27.)  First, Movant has not provided any independent evidence of these alleged instructions or threats.  Nor has he shown deficiency by counsel.  If Movant did not proceed with his plea of guilty, he would have breached the plea agreement, and any "plea deal" would have been terminated. (*See* doc. 16 at 5.)  The third attorney's estimation of 50-years was not in error. Movant was indicted with two counts, transporting and shipping child pornography in violation of 18 U.S.C. § 2252A(a)(1), and possessing child pornography in violation of 19 U.S.C. § 2252A(a)(5)(B). (*See* doc. 12.) 18 U.S.C. § 2252A(b)(1) states that the maximum sentence for the violation of § 2252A(a)(1) is 20 years. Section 2252A(b)(2) identifies the maximum sentence for the violation of § 2252A(a)(5) is 10 years. An obstruction of justice charge carries a maximum sentence of 20 years. *See* 18 U.S.C. § 1519. The three counts add up to a 50-year sentence. The third attorney properly made "informed predictions about the consequences of either

25

pleading guilty or going to trial." *Cothran*, 302 F.3d at 284. Moreover, even an erroneous estimation of potential sentence does not indicate ineffective assistance or an involuntary plea. *See United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir. 1987); *Beckham v. Wainwright*, 639 F.2d 262, 265 (5th Cir. 1981). Movant fails to show that the third attorney was constitutionally deficient in advising him of the consequences of not pleading guilty.

Movant testified at rearraignment that no one threatened him to plead guilty and that he was satisfied with his counsel's representation. (Doc. 47 at 5, 8.) In a July 25, 2013 letter, he complained that he entered into the guilty plea agreement involuntarily due to the second attorney's erroneous advice and the prosecutor's threat to bring charges against him and his father. (*Id.* at 11.)

Based on the review of the evidence on the record, Movant has not shown that he is entitled to relief. *See Arledge*, 597 F. App'x at 759. He has failed to overcome the presumption of veracity given to his sworn statements in court. Movant, therefore, failed to show that the third attorney's representation was constitutionally deficient. He also did not provide reasonable probability that but for the third attorney's deficient conduct, the outcome of his case would have been different. *See Armstead*, 37 F.3d at 206 ("[I]n a guilty plea scenario, a [movant] must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error.").[12] Movant's

---

[12] The Government submitted an affidavit by the third attorney along with other documentary evidence in response to Movant's motion that has not been considered. (3:13-CV-4631, doc. 7.) Attached is a November 6, 2012 letter from the third attorney reminding Movant that the decision to plead guilty was his, and that it was made after they "spent countless hours over the last few months discussing any and all defense strategies." (*Id.* at 8.) Because Movant's evidence is insufficient to create a fact issue, no hearing is warranted, even if the third attorney's affidavit were to be considered. The Fifth Circuit has held that "a district court need not automatically conduct an evidentiary hearing whenever there are 'competing affidavits.'" *United States v. Arledge*, 597 F. App'x 757, 759 (5th Cir. 2015). The district court "can use its own knowledge of the record, its observations from trial, its prior experience with the parties and counsel, and clear contradictions between an affidavit and other record documents to determine whether the § 2255 movant is entitled to 'no relief.'" *Id.*; *see also McDonald v. Johnson*, 139 F.3d 1056, 1060 (5th Cir. 1998) (affirming the district court's decision not to hold an evidentiary hearing in the presence of competing affidavits because there were "sufficient facts before it to make an informed decision" on the merits of the movant's claim).

third attorney was not ineffective in this regard.

### 2.    *Misrepresentation of Law*

Movant also asserts that the third attorney misrepresented to him that he only had to be in possession of the child pornography to be guilty of 18 U.S.C. 2252A(a)(5)(B). (3:13-CV-4631, doc. 2 at 25.) The only evidence in support of this allegation comes from Movant's father's affidavit, which claims that the third attorney told the father that the issue was not whether Movant knowingly possessed the child pornography, but whether the computer contained child pornography and Movant possessed his computer. (*Id.* at 45.) As noted, possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B) can be constructive, which requires only that Movant be in exclusive possession of the computer that contained child pornography. *See Moreland*, 665 F. 3d at 149-50. The third attorney's advice was not a misrepresentation of the law and was not constitutionally deficient.

In conclusion, Movant has not shown that he involuntarily pled guilty due to ineffective assistance of counsel. Under the totality of circumstances, it appears that he voluntarily entered his plea of guilty, and that his ineffective assistance claims related to the voluntariness of his plea entitle him to no relief in this § 2255 action.

## B.    <u>Second Attorney's Actions (Ground Three)</u>

Movant contends that his plea was involuntary because his second attorney was ineffective for (1) failing to conduct any investigation into the case; (2) urging Movant to plead guilty to a "non-existent offense"; (3) erroneously advising him that the maximum sentence exposure was 30 years; (4) failing to disclose the Government's version of the facts to him; and (5) unethically advising him to implicate his father in the offense. (3:13-CV-4631, doc. 2 at 16-24.)

### 1.      Investigation, Advice and Failure to Disclose

As noted, when a prisoner challenges the validity of his guilty plea based on ineffective assistance of counsel, the same two-part *Strickland* test applies. *Hill*, 474 U.S. at 58. The prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." (*Id.*) Where a defendant alleges ineffective assistance of counsel by his attorney, and he is subsequently represented by another counsel and pled guilty or had an opportunity to withdraw the guilty plea after the advice of the new counsel, the actions of the prior attorney do not amount to ineffectiveness.  *See United States v. Presley*, 415 F. App'x 563, 569 (5th Cir. 2011) (noting that because the movant had an opportunity to withdraw his plea represented by another attorney at a later proceeding, the actions by his previous attorney at an earlier proceeding did not amount to ineffectiveness); *United States v. Miller*, 910 F.2d 1321, 1325 (6th Cir. 1990) (finding that when the movant ratified the plea agreement subsequent to an appointment of counsel, "any [S]ixth [A]mendment violation that may have preceded the appointment of counsel" was waived (citing *United States v. Billington*, 844 F.2d 445 (7th Cir. 1988))).

Even assuming for purposes of this motion that Movant's second attorney was constitutionally deficient, any deficiency was rectified by the appointment of the third attorney, Movant's subsequent ratification of the plea agreement, and his guilty plea. Movant therefore fails to demonstrate that a reasonable probability that the second attorney's conduct affected the outcome of his case. *See Hill*, 474 U.S. at 58 (noting that to satisfy the *Strickland* prejudice prong in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").  The ineffective assistance of counsel claims against the second attorney related to voluntariness of his plea are

without merit.

### 2.      Advice to Implicate Parents

Movant also contends that his second attorney rendered ineffective assistance of counsel by telling him that the only way to avoid pleading guilty was to implicate his parents to the charged offense. (3:13-CV-4631, doc. 2 at 22-24.)  His affidavit states that his second attorney advised him "that [his] only viable defense, and the only way to avoid pleading guilty to the crime of which [he was] factually innocent, would be to 'throw [his] folks under the bus.'" (*Id.* at 38.) Based on this advice, he called his father and asked him to take the blame for the child pornography.[13] (*Id.*) Movant's father's affidavit states that he agreed to take responsibility for the child pornography, and he thought it was the second attorney's defense strategy. (*Id.* at 45.) Movant's parents' affidavits both state that the second attorney asked to meet with them on July 9, 2012, and at the meeting, the second attorney told them he was not "serious when he instructed [Movant] to 'throw [his] folks under the bus,' and that he would not be part of such a plan." (*Id.* at 48-49.)

The Fifth Circuit has recognized a limited circumstance in which a movant may seek habeas relief on the basis that his attorney made alleged promises to him, even though inconsistent with representations he made in court when entering his plea. A movant is entitled to an evidentiary hearing if he presents evidence of: 1) the exact terms of the alleged promise or advice; 2) exactly when, where, and by whom the promise was made; and 3) the precise identity of an eyewitness to the promise. *Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (citing *Hamason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989). A movant must produce independent indicia of the alleged advice,

---

[13]  Movant admitted that he made the phone call *after* he signed the plea agreement (*See* 3:13-CV-4631, doc. 7 at 11.)

typically by way of affidavits from reliable third parties. *Id.* "If, however, the defendant's showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary." *Id.*

Here, Movant's parents' affidavits state only that they had a meeting with the second attorney during which he made clear to them that he was not serious when he made the alleged statement to Movant, and that he would not be a part of such a plan. (*Id.*) The parents' affidavits do not support Movant's contention that the second attorney seriously advised him to implicate his parents for the crime.  He has therefore not provided independent indicia of the alleged advice.

Further, Movant and his parents never notified the third attorney or the Court about the second attorney's alleged advice.[14] (*See* 3:13-CV-4631, doc. 7 at 3.) Movant met with the third attorney on multiple occasions, and he never told the attorney about it. (*Id.* at 3, 8.) He was also before the Court at the rearraignment and also at the sentencing hearing and never mentioned the second attorney's alleged improper advice. (Docs. 47, 48.) Movant had his parents and friends to write letters to the Court directly, but none of them address the alleged advice by the second attorney. (3:13-CV-4631, doc. 22 at 16.) He wrote a letter to the third attorney after sentencing–when he was not under any pressure–and failed to discuss his second attorney's alleged advice that led to the threat of the obstruction of justice charge. (*See id.*, doc. 7 at 11.)

Movant's claim  is contrary to both the signed plea agreement and his sworn testimony at

---

[14]   Movant cites to his own affidavit to argue that the third attorney knew what the second attorney instructed him to do. (Doc. 12 at 13.) He contends that even if the third attorney did not know, he should have investigated it without Movant telling him, and such failure "fell below an objective standard of reasonableness." (*Id.*) Movant provides nothing more than his conclusory assertion to prove that the third attorney knew about the second attorney's unlawful instruction. Further, assuming the third attorney failed to investigate, "[t]he evidence must have been made known to defense counsel by petitioner, and must have been specific, admissible, and significant in order for counsel's failure to investigate to be constitutionally deficient." *United States v. Hardy*, No. 3:05cv784WS, 2007 WL 683941, at *19 (S.D. Miss. Feb. 28, 2007) (citing *Carter v. Johnson*, 131 F.3d 452, 465 (5th Cir. 1997)). Here, Movant failed to notify the third attorney of any need for investigation, and he cannot assert that the attorney was constitutionally deficient.

his rearraignment hearing as well as the bulk of his conduct in the light of other evidence in the record. *Cervantes*, 132 F.3d at 1110.  He acknowledged in the plea agreement that he had the right to plead not guilty but was waiving that right voluntarily. (Doc. 16 at 1.) Movant also testified at his rearraignment that he was waiving his right to plead not guilty and that he was pleading guilty voluntarily because he was guilty. (*See* doc. 47 at 8-9.)  He has not overcome the "strong presumption of verity" of his sworn testimony in court. *See Blackledge*, 431 U.S. at 73-74.   It reflects that he was not coerced into pleading guilty, that he understood the charges against him, and that he understood the consequences of his guilty plea. Nor has he offered "specific factual allegations supported by the affidavit of a reliable third person" to warrant a hearing on his allegations. *Sanderson*, 595 F.2d at 1021.  His guilty plea was voluntary, and his second attorney was not ineffective in this regard.

C.       **Failure to Explain Scope of Waiver**

Movant, for the first time in his reply to his amended § 2255 motion, contends that his counsel was ineffective for failing to inform him of the scope of the waiver, which rendered his plea involuntary.[15]  (3:13-CV-4631, doc. 22 at 18.)

Even if this new claim is considered, as noted, Movant testified under oath that he understood that he was under oath, he fully understood the charges against him, he fully understood the plea documents, he was voluntarily pleading guilty because he was guilty, he understood the waiver section of the plea agreement, and he was fully satisfied with his attorney's advice. (Doc. 47 at 3-15.) He provides no evidence aside from his conclusory assertions. It is insufficient to show that his counsel rendered ineffective assistance of counsel. *See Miller*, 200 F.3d 274, 282 (5th Cir. 2000)

---

[15]  Movant does not specify which attorney was allegedly deficient.

(holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

Movant also alleges that his first and second attorneys were ineffective at the initial appearance and pretrial stage, and that his third attorney was ineffective at sentencing.

**A.**     **Initial Appearance and Pretrial Stage (Grounds One and Two)**

Movant argues that his first and second attorneys were ineffective for failing to (1) challenge the validity of his arrest and advised him to waive the probable cause hearing; (2) object to the Government's motion for detention that contained errors; (3) object to false statements by the Government's witnesses; (4) argue for his release on bail; (5) advise him of his right to testify at the detention hearing; (6) move to suppress his statements to the law enforcement; (7) move to suppress evidence due to illegal search; (8) argue that the affidavit in support of the search warrant contained materially false statements; (9) argue that the search warrant was overly broad, lacking particularity; and (10) argue that the search was unreasonable and the "good faith" exception did not apply. (3:13-CV-4631, doc. 2 at 4, 10-16.)

As noted, "once a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived," and the waiver "includes all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Smith*, 711 F.2d at 682; *see also Cavitt*, 550 F.3d 430. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the

voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759 (1970) ]." *Tollett*, 411 U.S. at 267.

Here, none of the claims of ineffective assistance of counsel during the initial appearance and pretrial stages relate directly to the voluntariness of the Movant's guilty plea. Because Movant's guilty plea was knowing and voluntary, he waived all of his claims related to the initial appearance and pretrial stages. *See United States v. Sublet*, 211 F. App'x 301, 302 (5th Cir. 2006) ("With respect to his guilty-plea convictions, [the defendant] has waived all non-jurisdictional defects in the proceedings before the district court by entering a valid, unconditional guilty plea. That waiver includes the right to appeal any Fourth Amendment claims." (citations omitted)); *Gresham v. United States*, No. 3:14-CV-3589-P, 2015 WL 430765, at *4 (N.D. Tex. Feb. 2, 2015) ("The Fifth Circuit has held that a defendant's voluntary guilty plea waives all non-jurisdictional defects in the proceedings against the defendant, including putatively unreasonable searches and seizures[.]" (citations omitted)). He is therefore entitled to no relief on these claims.

## B.   <u>Sentencing (Ground Five)</u>

Movant claims that his third attorney was ineffective at sentencing for failing to object to (1) a five-level enhancement for distribution of child pornography; (2) a two-level enhancement for use of a computer; (3) a five-level enhancement for possessing over 600 pornographic images; and (4) a two-level increase for obstruction of justice and a denial of acceptance of responsibility reduction, in the PSR. (3:13-CV-4631, doc. 2 at 29-33.)

Movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh to show prejudice in the sentencing context.

33

*See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). The second prong of *Strickland* is not satisfied by mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are also insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir.1989); *United States v. Daniels*, 12 F.Supp.2d 568, 575-76 (N.D. Tex. 1998); *see also Miller*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

### 1.       Distribution of Child Pornography Enhancement

Movant argues that his third attorney was ineffective for withdrawing the objection to the five-level enhancement for the distribution of child pornography. (3:13-CV-4631, doc. 2 at 30-31.)

The third attorney objected to the five-level enhancement for the distribution of child pornography, asserting that there was no evidence Movant wanted to benefit from the distribution, but he withdrew the objection in order to maintain the plea agreement. (*See* doc. 30; 3:13-CV-4631, doc. 7 at 3.)  His affidavit states that the decision to withdraw the objection was "thoroughly explained" to Movant, who had "agreed to withdraw the objections and not file any subsequent objections." (*Id.*) The third attorney informed the Court regarding this issue at the sentencing hearing, and Movant chose not to testify. (Doc. 48 at 3.)

Movant alleges that his attorney explained that if he did not withdraw the objection, his guilty plea would "blow up" and that he would receive a guaranteed 50-year sentence. (3:13-CV-4631, doc. 2 at 30, 40.) His contention is consistent with the third attorney's explanation that the objection was withdrawn to maintain the plea agreement. Movant fails to show that the third

attorney's conduct was constitutionally deficient. *See e.g., United States v. Henry*, 336 F. App'x 309, 310 (4th Cir. 2009) ("Counsel's decision to withdraw the objection[] to the enhancement[] was tactical, and thus is entitled to a strong presumption of reasonableness." (citing *Strickland*, 466 U.S. at 689)). Moreover, he has not shown a reasonable probability that had the attorney not withdrawn the objection, the Court would have sustained the objection, and his sentence would have been reduced. *See Holstein v. United States*, No. 2:12-CV-0214, 2015 WL 1514986, at *20 (N.D. Tex. Mar. 17, 2015) ("Defendant also fails to meet his burden of showing a substantial likelihood that if counsel had not withdrawn the objections, any or all of the objections would have been sustained and the guideline range would have been reduced.").

Movant also contends that no upward enhancement for distribution was applicable because the search warrant affidavit referred to an incorrect internet provider (IP) address. (3:13-CV-4631, doc. 2 at 30-31.) The affidavit did twice list a wrong IP address, but correctly listed it four times. (*See id.*, doc. 21 at 28-33.) This is insufficient to show that the search warrant was invalid, however. *See United States v. Karo*, 468 U.S. 705, 719-20 (1984) (noting that a search warrant is not invalid if the search warrant provides sufficient information to establish probable cause without the unconstitutional portion). Movant has failed to demonstrate that had his attorney objected to this enhancement, the objection would have been granted and his sentence would have been less. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir.1997) (failure to make meritless objection cannot be grounds for ineffective assistance of counsel). Movant has not shown deficiency or prejudice.

### 2.    *Use of a Computer and Possession of Over 600 Images*

Movant alleges that the third attorney was ineffective when he failed to object to the two-level enhancement involving the use of a computer and the five-level enhancement for possessing

35

over 600 images. (3:13-CV-4631, doc. 2 at 31.) Movant cites to *United States v. Kelly*, 868 F.Supp.2d 1202 (D.N.M. 2012), to argue that the enhancements were unreasonable, and that a reasonable attorney would have objected. (*Id.*)

In *Kelly*, the court explained that it was exercising its discretion in sentencing the defendant below the guideline range because the computer enhancement and the over-600-images enhancement did not serve their purpose of individualizing the sentence for that specific defendant. *See Kelly*, 868 F.Supp.2d at 1209. The out-of-circuit court's exercise of its discretion in sentencing the specific defendant does not provide a general rule applicable in this case.

Moreover, Movant admitted that the generic computer seized from his room was his, he had built it himself, and that he was the only user of the computer. (*Id.,* doc. 18 at 2.) A forensic analysis of the generic computer revealed over 900 videos and 1200 images of child pornography in a shared file folder; some of the images depicted bondage and sadism involving minors. (*Id.*) He has not shown that any objection on this basis would have merit.   *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir.1999) (counsel is not ineffective for failing to raise a meritless argument).

### 3.   *Obstruction of Justice and Acceptance of Responsibility*

Movant contends that the third attorney was ineffective for failing to object to the two-level enhancement for obstruction of justice and the denial of a three-level deduction for acceptance of responsibility. (3:13-CV-4631, doc. 2 at 32.)

Movant's first affidavit states that the third attorney told him that if he pled guilty, the obstruction of justice charge would go away, but it was a basis for an upward adjustment when he received the PSR. (*Id.* at 40.) When he asked his attorney, the attorney told him that the prosecutor wanted a record of it. (*Id.*) The third attorney did not file an objection to the obstruction

36

enhancement, or to the denial of acceptance of responsibility, because an objection would have caused the plea deal to "blow up". (*Id.* at 32.)

Movant has not shown that an objection to the obstruction enhancement would have been sustained. A "sentencing enhancement . . . is not tantamount to new charges against the defendant." *Robinson v. United States*, No. 05-3188, 2006 WL 167704, at *2 (D.C.Ill. Jan. 23, 2006). His attorney was not ineffective for failing to object to this enhancement. *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (stating that a failure to raise a meritless objection is not ineffective assistance). Nor was he deficient for failing to object to the denial of acceptance of responsibility. Moreover, Movant received a 120-month sentence based on the plea agreement, and not the guideline sentence recommended in the PSR. (3:12-CR-151-B, doc. 16.) He has also not shown a reasonable probability that his sentence would have been less harsh had counsel made these objections.

## VI. ACTUAL INNOCENCE

Movant asserts that he is innocent of the crimes to which he pled guilty because he is gay and did not knowingly possess the child pornography. (3:13-CV-4631, doc. 2 at 36-38.)

To the extent that he is attempting to raise an actual innocence claim, both the Supreme Court and the Fifth Circuit have held that a stand-alone claim of actual innocence is not a ground for habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir.2000). Furthermore, in *Herrera*, the Supreme Court stated that, even if "truly persuasive" showing of actual innocence would warrant federal habeas relief, the threshold for such a claim would be "extraordinarily high." *Id.* at 417.

Movant has not met this high burden. He fails to identify any evidence to support his innocence. He has not overcome either the recitation of facts set forth in the factual resume he

signed or the facts as set forth in PSR.[16] As noted, the "knowing" requirement of 18 U.S.C. §

2252A(a)(5)(B) is met by Movant's exclusive possession of the computer that contained the child

pornography. *See Moreland*, 665 F. 3d at 149-50. Any actual innocence claim raised by Movant is

without merit and should be denied.

## VII.  EVIDENTIARY HEARING

No evidentiary hearing is required when "the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Here, the record

conclusively shows that Movant is entitled to no relief, so no hearing is required.

## VIII.  RECOMMENDATION

The *Motion by a Person in Federal Custody to Vacate, Set Aside, or Correct Sentence*

pursuant to 28 U.S.C. § 2255 should be **DENIED** with prejudice.

**SO RECOMMENDED on this 2nd day of June, 2015.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[16] Despite Movant's contention that he never admitted to knowingly possessing child pornography, his factual resume states that he downloaded child pornography images using the internet and that he *knew* that the images and videos found in his computer depicted minors engaged in sexually explicit conduct.  (Doc. 18 at 4.)

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

39